# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| | ) | |
| DOC PALAPA CO., | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | |
| | ) | |
| GLOBAL INNOVATION, LLC. d/b/a, | ) | **Jury Trial Demanded** |
| ENDUREED, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF DOC PALAPA CO.'S COMPLAINT
## AND DEMAND FOR JURY TRIAL
## INJUNCTIVE RELIEF SOUGHT

This is a Complaint for patent infringement. Doc Palapa Co. ("Doc Palapa") brings this action against Global Innovation, LLC d/b/a Endureed ("Endureed") and states as follows.

## NATURE OF THE SUIT

1.     This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## PARTIES

2.     Doc Palapa is a corporation duly organized and existing under the laws of the State of Georgia with its principal place of business at 3435 Chestatee Road,

Gainesville, Georgia 30506. Among other things, Doc Palapa is engaged in the design, development, manufacture, and sale of synthetic thatch elements.

3.      Upon information and belief, Defendant Endureed is a Florida Limited Liability Company with its principal place of business at 313 SW Windswept Glen, Lake City, Florida 32024.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338 because this case arises under the patent laws of the United States, Title 35 of the United States Code.

5.      This Court has personal jurisdiction over Endureed because it has substantial, systematic, and continuous contacts with this judicial district. Endureed is incorporated in Florida, is a resident of this judicial district, and maintains an office and transacts business within this judicial district. Endureed further maintains a registered office in this judicial district. Moreover, Endureed has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271 by placing infringing products into the stream of commerce with the knowledge, understanding, and expectation that such products will be sold in the state of Florida and in this judicial district. Additionally, events giving rise to this suit occurred in this judicial district, including Endureed's acts of infringement.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Endureed resides in this judicial district, is incorporated in this judicial district, is a resident of Florida, and maintains an office within this judicial district.

2

Endureed also regularly and continuously transacts business within this judicial district, including by making and/or selling infringing products directly and/or through affiliates in this judicial district (*see, e.g.*, https://endureed.com/our-story/).

## FACTUAL BACKGROUND

### A.    FACTS RELATED TO PLAINTIFF DOC PALAPA

7.    Founded by David Michael Valentine in 2012, Doc Palapa is a pioneer and innovator in the synthetic thatch roofing industry.

8.    Through considerable investment in research and development and the skill of its founder, Doc Palapa has been working to begin manufacturing, selling, marketing, and/or distributing thatched roofs and synthetic thatch roofing products.

### B.    THE PATENT-IN-SUIT

9.    On February 27, 2013, U.S. Patent Application No. 13/779,500, entitled "Synthetic Thatch Members for Use as Roofing Material Products and Methods of Making and Using the Same," was filed with the United States Patent & Trademark Office ("USPTO"), naming David Michael Valentine as the sole inventor.

10.    On October 4, 2013, the USPTO recorded an assignment of U.S. Patent Application No. 13/779,500 from Mr. Valentine to Doc Palapa.

11.    On March 24, 2015, the USPTO duly and legally issued U.S. Patent No. 8,984,836 (the "836 Patent"), entitled "Synthetic Thatch Members for Use as Roofing Material Products and Methods of Making and Using the Same." A true and correct copy of the 836 Patent is attached hereto as Exhibit A.

12.     The 836 Patent contains 28 claims, which recite a synthetic thatch member for use as a roofing material product, and methods for manufacturing and installing the same.

13.     Each claim of the 836 Patent is valid and enforceable.

14.     Doc Palapa is the current assignee of the 836 Patent, with the right to sue and recover for past infringement of the 836 Patent and any and all causes of action and remedies, either legal and/or equitable, related thereto.

**C.     DEFENDANT ENDUREED**

15.     Endureed is in the business of manufacturing, selling, marketing, and/or distributing thatched roofs and synthetic thatch roofing, including the VIVA Palm product (Ex. E). Endureed distributes and sells these products throughout the United States, including Florida (*see, e.g.*, https://endureed.com/our-story/).

16.     Doc Palapa and Endureed are competitors in the synthetic thatch roofing business.

17.     At least as early as 2015, Endureed introduced its VIVA Palm line of cast synthetic thatch roofing to the market. Selected images of the VIVA Palm product are reproduced below:



| Hip/Ridge Shingle | Field Shingle |
|---|---|
| Hip/Ridge | Field |
| Ex. D at 4. | Ex. D at 4. |
| Hip/Ridge Shingle | Folded Field Shingle |
| Ex. B at 1. | Ex. B at 1. |

18. According to Endureed, the VIVA Palm line imitates the appearance and texture of natural thatch roofing, reducing maintenance costs and increasing durability. Literature further describing Endureed's VIVA Palm line is attached hereto as Exhibit B

(Product Data Sheet)[1], Exhibit C (Technical Drawings)[2], Exhibit D (Installation Manual)[3], and Exhibit E (VIVA Palm Website)[4].

### D.      BACKGROUND OF THE INVENTION

19.      According to the 836 Patent, thatch elements are often used as decorative or roofing material products. Natural thatch elements tend to be flammable and degrade rapidly by natural conditions. As such, the commercial viability of natural thatch elements as roofing material products is minimal, if not non-existent.

20.      As an alternative to natural thatch elements, a variety of synthetic thatch elements, made from polymers or other materials, have been designed to have increased environmental stability. These synthetic thatch elements, however, do not fully replicate the "natural" look, making them less commercially viable.

21.      The 836 Patent addresses this issue, disclosing durable, naturally shaped synthetic thatch elements and methods of manufacturing and installing the same.

### D.      ENDUREED'S INFRINGEMENT OF THE 836 PATENT

22.      Endureed currently manufactures synthetic thatch roofing products that infringe the 836 Patent, including but not limited, to the VIVA Palm line and any

---

[1] Last accessed Aug. 31, 2020 at https://endureed.com/wp-content/uploads/2020/03/VIVA-PDS-02_2020.pdf.
[2] Last accessed Aug. 31, 2020 at https://endureed.com/wp-content/uploads/2019/07/Tech-Drawings-viva.pdf.
[3] Last accessed Aug. 31, 2020 at https://endureed.com/wp-content/uploads/2019/07/Installation-manual-viva.pdf.
[4] Last accessed Aug. 31, 2020 at https://endureed.com/thatch-products/viva-series/.

additional products having a similar structure, function, or operation ("Accused Products").[5]

23.     The Accused Products are synthetic thatch members for use as a roofing material product (Ex. B at 1; Ex. E at 2).

24.     Endureed manufactures and installs the Accused Products (Ex. E).

25.     Endureed infringes claims 1-3, 6-7, 11-13, 17-21, 23, and 26 ("the Asserted Claims") by practicing, making, using, selling, or offering for sale in this judicial district and elsewhere the inventions claimed in the 836 Patent through the manufacturing, sale, and installation of the Accused Products. Claim charts demonstrating the Accused Products' infringement of the Asserted Claims are attached hereto as Exhibit G.

### D.     ENDUREED'S REFUSAL TO LICENSE THE 836 PATENT

26.     Endureed has had actual knowledge of the 836 Patent since at least as early as April 29, 2015, when Mr. Abram Huber received a letter intended to start a conversation about licensing the 836 Patent.

27.     Following receipt of this letter, Mr. Huber met with Mr. Valentine at Endureed's headquarters in Florida, and the two discussed a potential license agreement which would grant Endureed non-exclusive rights to practice the 836 Patent.

28.     Following Mr. Valentine's return from Endureed, Doc Palapa sent Mr. Huber a proposed license agreement, dated July 8, 2015. A copy of this proposed license

---

[5] By way of example, Doc Palapa identifies the Regions product line as products which may have a similar structure, function, or operation to the VIVA Palm line (*see, e.g.*, https://endureed.com/thatch-products/regions-series/).

agreement is attached hereto as Exhibit F. To date, Mr. Huber has refused to license the 836 Patent.

29.     Over the course of the next several years, Doc Palapa made numerous additional unsuccessful attempts to negotiate a license agreement with Endureed. Although the parties were in frequent communication, Endureed consistently failed to respond to Doc Palapa's licensing overtures.

## COUNT I
## Infringement of the 836 Patent

30.     Plaintiff incorporates herein by reference each and every allegation contained in paragraphs 1–29, above.

31.     As illustrated in Exhibit G, Endureed has infringed and continues to infringe, directly or indirectly, at least claims 1-3, 6-7, 11-13, 17-21, 23, and 26 of the 836 Patent in violation of 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by practicing, making, using, selling, offering to sell, manufacturing, testing, demonstrating, and/or using the Accused Products in the United States.

32.     The Accused Products infringe each and every element of the Asserted Claims. The preamble of claim 1 recites "[a] synthetic thatch member for use as a roofing material product, said synthetic thatch member" comprising certain elements. The Accused Products are described by Endureed as "[p]remium aesthetics meet affordability with this authentic, *palm style thatch*. VIVA palm is a *synthetic palm leaf formed into a textured shingle* and then cut with a unique pattern to replicate the appearance of natural palm leaves" (Ex. E at 2 (emphasis added)). Similarly, the Accused Products are described by Endureed as follows: "*VIVA palm is an innovative*

8

*roofing system* simulating the appearance and texture of natural palm thatch" (Ex. B at 1 (emphasis added)).

33.     Claim 1[a] recites "a plurality of frond members, said frond members defining a first three-dimensional surface of said thatch member and a second three-dimensional surface of said thatch member, said first and second surfaces comprising opposing sides of said plurality of frond members."  The Accused Products are synthetic thatch members for use as a roofing material product which are composed of a plurality of frond members that define a first three-dimensional surface (the top of the shingle) and a second three-dimensional surface (the bottom of the shingle) as depicted below. The top and bottom surfaces of the shingles constitute opposing sides of the frond members.



34.     Claim 1[b] recites "a fused portion, said fused portion comprising a first portion of said first and said second three-dimensional surfaces of each of said plurality of frond members, wherein each of said first portions is connected relative to one another, such that said fused portion defines a substantially impermeable surface." The

Accused Products have a fused portion comprising a first portion of each of the plurality of frond member, such that the first portion is fused in order to create a substantially impermeable surface (Ex. G at claim 1). For example, according to Endureed, VIVA Palm is "[d]esigned to withstand long-term UV exposure, fire and *the rigors of inclement weather*" (Ex. E at 2 (emphasis added)).

35.    Claim 1[c] recites "a serrated portion, said serrated portion being located substantially adjacent said fused portion and comprising a second portion of said first and said second three-dimensional surfaces of each of said plurality of frond members, wherein each of said second portions is separated relative to one another, such that a plurality of gaps are defined between each of said second portions of each of said plurality of frond members." Each of the Accused Products have a serrated portion located substantially adjacent the fused portion which is defined by a plurality of gaps. The fused portion and serrated portion are depicted below (Ex. D at 4).



36.    Claims 2 recites "The synthetic thatch member of claim 1, wherein each of the plurality of frond members comprises a pair of angled surfaces, said pair of angled surfaces being oriented relative to one another so as to further define both said first and

said second portions of said first and said second three-dimensional surfaces of said thatch member."

37.    The Accused Products consist of synthetic thatch members as defined in claim 1, wherein each thatch member is composed of a plurality of frond members. Each frond member comprises a pair of angles surfaces oriented relative to one another, as depicted below.



38.    Claims 3[a] recites "The synthetic thatch member of claim 2, wherein: said pair of angled surfaces define a ridge portion on each of said plurality of frond members." The Accused Products consist of synthetic thatch members as defined in claim 2, wherein each frond member consists of a pair of angled surfaces which define a ridge portion (Ex. G at claim 3).

39.    Claims 3[b] recites "said pair of angled surfaces define at least one valley portion adjacent at least one edge of each of said plurality of frond members." The Accused Products consist of synthetic thatch members as defined in claim 2, wherein each frond member consists of a pair of angled surfaces which define a valley portion

(Ex. G at claim 3). The ridge portion and valley portion of the Accused Products are depicted below:



40.     Claims 3[c] recites "in said fused portion, said at least one valley portion is configured to, at least in part, define said substantially impermeable surface." The Accused Products consist of synthetic thatch members as defined in claim 2, wherein each frond member consists of a valley portion configured in part to define a substantially impermeable surface (Ex. G at claim 3).

41.     Claims 3[d] recites "in said serrated portion, said at least one valley portion is configured to, at least in part, define said plurality of gaps." The Accused Products consist of synthetic thatch members as defined in claim 2, wherein each frond member consists of a valley portion configured in part to define a plurality of gaps (Ex. G at claim 3). The substantially impermeable surface and plurality of gaps are depicted below:



42.    Claims 6 recites "The synthetic thatch member of claim 1, wherein a length of said synthetic thatch member is variable across each of said plurality of frond members, such that a substantially fan-shaped arc is defined at least in part by said second portions of each of said plurality of frond members in said serrated portion."  At least the Accused Products' Hip/Ridge shingles consist of a plurality of variable length frond members which define a fan-shaped arc, as depicted below (Ex. D at 4).



43.    Claims 7 recites "The synthetic thatch member of claim 1, wherein a length of said synthetic thatch member is substantially fixed across each of said plurality

of frond members, such that a substantially linear edge of said synthetic thatch member is defined at least in part by said second portions of each of said plurality of frond members in said serrated portion." At least the Accused Products' Field shingles consist of a plurality of substantially fixed length frond members which denote a substantially linear edge, as depicted below (Ex. D at 4).



44.     Claim 11 recites "The synthetic thatch member of claim 1, wherein a width of each of said plurality of frond members is approximately one inch." The Accused Products contain a plurality of frond members wherein the width is approximately one inch (Ex. G at claim 12).



45.     Claim 12 recites "The synthetic thatch member of claim 11, wherein said width is variable so as to define a taper between said first and said second portions of each of said plurality of frond members, such that said width in said second portion is substantially less than said width in said first portion." The Accused Products contain a plurality of frond member with a variable width, such that the variable width defines a taper from the fused portion of the frond member to the serrated portion of the frond member (Ex. G at claim 12).

46.     Claim 13 recites "The synthetic thatch member of claim 12, wherein each of said tapers on each of said plurality of frond members define, at least in part, each of said plurality of gaps between each of said second portions of each of said plurality of frond members." Each of the plurality of frond members found within the Accused Products contains a tapered width which defines a plurality of gaps. Both the tapers and the plurality of gaps are depicted below (Ex. D at 4).



47.     Claim 17 recites "The synthetic thatch member of claim 1, wherein said first and said second three-dimensional surfaces of said thatch member comprise a texture imprinted thereon." EnduREED describes the Accused Products as follows: "Viva Palm is a synthetic palm leaf *formed into a textured shingle*" (Ex. E at 1 (emphasis added)); "Viva Palm is available in two different pattern designs. The pattern design is *visible on the interior ceiling* when used in the horizontal or vertical batten configuration" (Ex. B at 1 (emphasis added)).

48.     Claim 18 recites "The synthetic thatch member of claim 17, wherein said texture comprises a plurality of irregularities formed in one or more of each of said

plurality of frond members." Endureed describes the Accused Products as follows: "Pattern: VIVA Palm includes two different pattern designs which make up the underside ceiling texture. Choosing Fanned versus Folded VIVA is simply an aesthetic choice. However, *each pattern has two different variations (A and B) among the pattern to prevent obvious repetition and give a more realistic look*. Both the A and B shingles will be included in every VIVA palm order" (Ex. B at 5 (emphasis added)).

49.     Claim 19 recites "The synthetic thatch member of claim 1, wherein said member further comprises an attachment portion, said attachment portion being configured to selectively secure proximate portions of each of said plurality of frond members, said proximate portions being substantially opposite said portions of each of said plurality of frond members defining said serrated portion." Each of the Accused Products contains an attachment portion which is located substantially opposite the serrated portion, as depicted below (Ex. D at 5, 9).



50.     Claim 20 recites "The synthetic thatch member of claim 1, wherein said fused portion covers a surface area of approximately one square foot." On information

and belief, the Accused Products are synthetic thatch members as defined in claim 1, wherein said fused portion covers a surface area of approximately one square foot. Endureed specifications list the "coverage" of a VIVA Palm Field shingle as 1.88 square feet (Ex. B at 2). As the fused portion of the Field shingle consists of roughly half of the total area of the single, the fused portion covers a surface area of approximately one square foot (Ex. G at claim 20).

51.     Claims 21 and 23 of the 836 Patent cover a method of installation for the Accused Products. Endureed's method of installation for the Accused Products infringes at least claims claims 21 and 23 of the 836 Patent.

52.     The preamble to Claim 21 recites "A method of installation of a synthetic thatch member for use as a roofing material product, said method of installation comprising the steps of…" Endureed's installation instructions state: "This instruction manual is for the installation of VIVA on an open batten roof frame" (Ex. D at 1-2).

53.     Claim 21[a] recites "providing a plurality of synthetic thatch members, each member comprising…" The 836 Patent describes the plurality of thatch members in claim 21 using identical language to claim 1. For additional analysis of this limitation, see claim 1, *supra*.

54.     Claim 21[b] recites "affixing a first one of said plurality of synthetic thatch members to an adjacently positioned portion of a roofing structure, such that said serrated portion is oriented substantially below said fused portion." The installation guidelines for the accused products recite: "Construct the eave by *installing the first row of field shingles on the second purlin, nailing on every indent except the top corner.*

Place a nail to the lower purlin at the end of the shingle, which will be covered by the following shingle. Always leave a minimum 2" inch side lap on all shingle installations" (Ex. D at 6 (emphasis added)). The guidelines further depict the serrated portion of the synthetic thatch member oriented substantially below the fused portion (*id.*).

55.     Claim 21[c] recites "affixing a second one of said plurality of synthetic thatch members to an adjacently positioned portion of said roofing structure, such that said first and second ones of said plurality of synthetic thatch members are both positioned substantially along the same horizontal plane, and such that at least a portion of said fused portion of said second one of said plurality of synthetic thatch members at least partially overlaps at least a portion of said fused portion of said first one of said plurality of synthetic thatch members."

56.     The installation manual for the Accused Products provides for attaching a second synthetic thatch member along the same plane horizontal plane such that the thatch members overlap. The installation manual explicitly states: "the third row will attach to the same purlin as the first row. Make sure all side laps are a minimum of two inches" (Ex. D at 6).

57.     Claim 23 recites "The method of claim 21, further comprising the step of affixing a third one of said plurality of synthetic thatch members to an adjacently positioned portion of said roofing structure, such that at least a portion of said fused portion of said third one of said plurality of synthetic thatch members is positioned substantially above said first and said second ones of said plurality of synthetic thatch members, such that at least a portion of said fused portion of said third one of said

plurality of synthetic thatch members at least partially overlaps both (i) at least a portion of said fused portion of said first one of said plurality of synthetic thatch members; and (ii) at least a portion of said fused portion of said second one of said plurality of synthetic thatch members."

58.     The installation manual for the Accused Products specifically depicts attaching a third synthetic thatch member that overlaps with two pre-existing thatch members, such as it overlaps both (i) at least a portion of said fused portion of said first one of said plurality of synthetic thatch members; and (ii) at least a portion of said fused portion of said second one of said plurality of synthetic thatch members (Ex. D at 6; Ex. G at claim 23). This is depicted in additional detail below:



59.     Moreover, Endureed induces other parties, including its customers, to infringe at least claims 21 and 23 of the 836 Patent at least by providing instructions on how to install the Accused Products (Ex. D). Endureed's proposed method of installation infringes at least claims 21 and 23 of the 836 Patent.

60.     The preamble to claim 26 recites "[a] method of manufacturing a synthetic thatch member for use as a roofing material product, the thatch member comprising a plurality of frond members, the method comprising the steps of…" Endureed utilizes a method of manufacturing the Accused Products. Moreover, the Accused Products constitute synthetic thatch members for use as roofing products comprised of a plurality of frond members.

61.     The Accused Products are described by Endureed as "Premium aesthetics meet affordability with this authentic, *palm style thatch*. VIVA palm is a *synthetic palm leaf formed into a textured shingle* and then cut with a unique pattern to replicate the appearance of natural palm leaves." Ex. E at 2 (emphasis added). Similarly, the Accused Products are described by Endureed as "*VIVA palm is an innovative roofing system simulating the appearance and texture of natural palm thatch*" (Ex. B at 1 (emphasis added)).

62.     Claim 26[a-b] recites "placing a molten polymer material into a mold; and forming said synthetic thatch member from said molten polymer material." On information and belief, the Accused Products are manufactured through vacuum forming, which is a process by which molten polymers (such as HDPE) are molded to create the desired plastic structure (Ex. G at claim 26).

63.     Claim 26[b] further recites "said synthetic thatch member comprising…" The 836 Patent describes the thatch member in claim 26 using identical language to claim 1. For additional analysis of this limitation, see claim 1, *supra*.

64.     Claim 26[c] recites "wherein said mold defines said structural configuration of at least said plurality of frond members, said fused portion, and said serrated portion." On information and belief, the Accused Products are manufactured through vacuum forming, which is a process by which molten polymers (such as HDPE) are molded to create the specified structures, including but not limited to a plurality of frond members, a fused portion, and a serrated portion (Ex. G at claim 26).

65.     Moreover, Endureed induces other parties, including companies engaged in the manufacture of the Accused Products, to infringe at least claim 26 the 836 Patent at least by providing instructions on how to manufacture the Accused Products. Endureed's method of manufacture infringes at least claim 26 of the 836 Patent.

66.     Doc Palapa has been damaged by Endureed's past and continuing infringement of the 836 Patent in an amount to be determined at trial.

67.     Doc Palapa has been and continues to be irreparably injured by Endureed's past and continuing infringement of the 836 Patent, and Endureed's infringing activities will continue unless enjoined by this Court pursuant to 35 U.S.C. § 283.

68.     Doc Palapa has suffered and is suffering money damages from Endureed's unauthorized infringement that are compensable under 35 U.S.C. § 284 in an amount to be determined at trial or hearing.

69.     Given Endureed's knowledge of the 836 Patent since at least as early as the April 29, 2015 letter from Mr. Valentine to Mr. Huber, Endureed's infringement has been and continues to be willful, thus enabling Doc Palapa to recover treble damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Doc Palapa prays that the Court:

(a)     Issue a judgment that Endureed has infringed one or more claims of the 836 Patent;

(b)     Issue an injunction preliminarily and permanently enjoining Endureed, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing the 836 Patent;

(c)     Award damages adequate to compensated Doc Palapa for Endureed's infringement, with the maximum pre-judgment and post-judgment interest and costs, as provided by 35 U.S.C. § 284;

(d)     Rule that the damages award be increased up to three times the actual amount assessed, as provided by 35 U.S.C. § 284;

(e)     Declare this case exceptional, in accordance with 35 U.S.C. § 285;

(f)     Award Doc Palapa its attorneys' fees, costs, and expenses; and

(g)     Grant Doc Palapa any further relief that may be necessary to achieve justice.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Doc Palapa requests a trial

by jury of all issues so triable to a jury raised in this Complaint.


Dated: October 9, 2020                    /s/ Thomas W. Davison

                                          Thomas W. Davison, Trial Counsel
                                          Fl. Bar No. 55687
                                          **ALSTON & BIRD LLP**
                                          950 F St. NW
                                          Washington, DC 20004-1404
                                          Telephone: (202) 239-3300
                                          Fax: (202) 239-3333
                                          Email: tom.davison@alston.com

                                          Holly Hawkins Saporito (*pro hac vice*
                                          forthcoming)
                                          Thomas F. Finch (*pro hac vice*
                                          forthcoming)
                                          **ALSTON & BIRD LLP**
                                          One Atlantic Center
                                          1201 West Peachtree Street
                                          Atlanta, Georgia 30309-3424
                                          Telephone: (404) 881-7000
                                          Fax: (404) 881-7777
                                          Email: holly.saporito@alston.com
                                                  thomas.finch@alston.com

                                          *Counsel for Plaintiff*
                                          *Doc Palapa Co.*