# Exhibit F

# ALSTON & BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

404-881-7000
Fax: 404-253-8182
www.alston.com

Christopher P. Lightner                   Direct Dial: 404-881-7882                   Email: chris.lightner@alston.com

July 8, 2015

Mr. Abram Huber
Endureed Premium Synthetic Thatch
496 SW Ring Court
Lake City, FL 32025

Re:   Proposed License Terms for U.S. Patent No. 8,984,836
      Our Matter No. 059656/462362

Dear Mr. Huber:

As a follow up to your recent meeting with our client, Mr. David Valentine, dba Doc Palapa Co. ("Doc Palapa"), we have been authorized to provide you with a proposed license agreement, which we have attached hereto as Exhibit A.

In sum and according to the terms of the attached proposed license agreement, Doc Palapa proposes to grant you a non-exclusive license to U.S. Patent No. 8,984,836 ("the '836 patent") in exchange for an annual payment of $200,000 USD. Please note that the proposed license agreement extends for the remaining term of the '836 patent. Please note also that the proposed license agreement applies to licensed products made, used, sold, offered for sale, and/or imported into the United States of America by your company, Endureed, and/or any of its subsidiaries.

Please also note that Doc Palapa has a multitude of related patent applications pending in foreign countries covering analogous synthetic thatch products and technologies that are presently excluded from the scope of the proposed license agreement. At such time as should any of the related foreign patent applications grant as new foreign patents, Doc Palapa reserves the right to revisit or otherwise supplement the proposed license agreement with further terms directed toward possible licensing of those foreign patents by Endureed and/or any of its subsidiaries. This aspect may, of course, be handled at a later date.

In view of the above, we ask that you please review the attached proposed license agreement and let us know whether you are in substantial agreement with the terms provided therein. If we have not heard from you within 14 days of the postmark date of this letter, we will follow up with you accordingly.

Endureed Premium Synthetic Thatch
Page 2

Best regards,

Christopher P. Lightner

Enclosure:   Exhibit A

## NON-EXCLUSIVE LICENSE AGREEMENT

This Non-Exclusive License Agreement ("Agreement") is made effective this __ day of _____, 2015 ("Effective Date"), by and between Doc Palapa Co., a [Georgia] [corporation] with its principal place of business at 3435 Chestatee Road, Gainesville, GA, 30506 ("Doc Palapa"), and _____ having its principal address as _____ ("Endureed").  Doc Palapa and/or Endureed may be referred to herein individually as a "Party" or collectively as the "Parties," as the case may require.

**WHEREAS**, Doc Palapa owns the Licensed Patents, as that term is defined below;

**WHEREAS**, Endureed desires to obtain a license from Doc Palapa to use the Licensed Patents upon the terms and conditions set forth in this Agreement;

**NOW, THEREFORE**, in consideration of the mutual promises and obligations set forth herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Doc Palapa and Endureed agree as follows:

**1      DEFINITIONS**

As used in this Agreement:

1.1    "Affiliate" means any corporation, partnership, or other entity that is in or under the Control of Doc Palapa, or any successor to all or substantially all of the business of Doc Palapa, whether by merger, combination, or sale of Doc Palapa.

1.2    "Business" means any bank, company, corporation, entity, association, trust, enterprise, division, business unit, or the like. For purposes of clarification, production lines and the like are not considered Business.

1.3    "Control" means having, directly or indirectly, ownership, profits, voting, or other similar interest representing at least fifty percent (50%) of the total interests of the pertinent entity.

1.4    "Effective Date" means the date in the first line of this Agreement.

1.5    "Inventions" means all inventions, discoveries, designs, developments, and know how related to any of the Licensed Patents or any invention disclosed or claimed in any of the Licensed Patents, or the design, development, manufacture, use, or testing of the Licensed Product, including, but not limited to, all information and test results, and marketing materials generated as a result of the License whether preliminary or final, and in whatever media rendered, including, without limitation, all works of authorship, any accompanying documentation, user manuals, instructions, or specifications, releases, creations, updates, expressions, improvements, enhancements, modifications, formulas, compositions, product development plans, solutions, research, patterns, devices, methods, drawings, schematics, processes, computer programs, versions, specifications, objects, tools, operating instructions, and documentation, whether patentable or unpatentable, which are first conceived or made or first actually or constructively reduced to practice during the Term of this Agreement or thereafter.

1.6     "License Fee" shall have the meaning set forth in Paragraph 3.1 below.

1.7     "Licensed Patents" means U.S. Patent No. 8,984,836.

1.8     "Licensed Product" means the synthetic thatch product developed, in whole or in part, by, for or on behalf of, Endureed using the Licensed Patents, which is covered in whole or in part by a claim contained in any of the Licensed Patents in the country in which any such product or component thereof is made, used, offered for sale, sold or imported, or is manufactured by using a process or is employed to practice a process which is covered in whole or in part by a claim contained in any of the Licensed Patents in the country in which such product or part thereof is used, offered for sale, sold or imported.

1.9     "Licensed Territory" means the United States of America.

1.10    "Subsidiary" means any Business that is Controlled by Endureed on the Effective Date and excludes any Business that is not Controlled by Endureed until after the Effective Date (i.e., becomes controlled by Endureed after the Effective Date).

**2       LICENSES; COVENANTS NOT TO SUE; RELEASES; LIMITATIONS**

2.1     Subject to the terms and conditions of this Agreement, and Endureed's compliance therewith, Doc Palapa on behalf of itself and its Affiliates hereby grants to Endureed a limited, non-exclusive, personal, non-transferable, non-sublicensable, revocable license in the Licensed Territory under the Licensed Patents during the term as defined in Article 9 (unless this Agreement is terminated sooner according to the terms hereof) to make, use, sell, offer for sale, import, and otherwise dispose of the Licensed Products.

2.2     Doc Palapa shall have the sole discretion to make any and all decisions regarding the prosecution and maintenance of any of the Licensed Patents, including, but not limited to, whether to continue the prosecution of (i) any patent application, (ii) any future U.S. or foreign patents or patent applications that claim priority to any patent application, and (iii) any reissues, reexaminations, renewals, extensions, divisions, continuations, and continuations-in-part of any patents or patent applications.

2.3     This Agreement shall not be deemed to grant, or to authorize or permit Endureed to sub-license, transfer, or grant, to any other person or entity, whether expressly or implicitly any right, obligation or duty (including any license, release or freedom from suit) under this Agreement or this Agreement itself, without the express prior written consent of Doc Palapa.

2.4     Endureed acknowledges that this Agreement only grants a patent license, and no technology, know-how, trade secrets or any other intellectual property or proprietary right is licensed pursuant to this Agreement, or will be required to be transferred or licensed from Doc Palapa to Endureed as part of this Agreement. Doc Palapa expressly reserves all rights not expressly granted herein, and no term or condition of this Agreement shall be interpreted as prohibiting or preventing Doc Palapa from using, licensing or otherwise exploiting such rights or any right which is the subject of this Agreement. No license, right, title, or any other interest are granted hereby under any patents, copyrights, trademarks, trade secrets, or other intellectual

property owned by either Party except for the license and rights expressly granted in this Agreement.

**3    LICENSE FEE**

3.1    No later than thirty (30) days after the Effective Date and on January 1 of each year thereafter during the Term of this Agreement, Endureed shall pay to Doc Palapa a non-refundable license fee of two hundred thousand dollars ($200,000) ("License Fee").

3.2    All amounts due and payable under this Agreement by Endureed will be paid in United States dollars. Payments shall be payable by electronic fund transfer into Doc Palapa's bank account (details to be provided by Doc Palapa). All payments due hereunder shall be paid in full, without deduction of taxes or other fees which may be imposed by any government or tax authority and which shall be paid by Endureed or its designee.

**4    OWNERSHIP**

4.1    Endureed acknowledges and agrees that it has no right, title or interest in or to any of the Licensed Patents, or any claim therein or related thereto, or invention disclosed therein or related thereto, other than the license rights expressly granted in Section 2 above, and that all right, title and interest in and to the Licensed Patents, and all inventions claimed or disclosed therein, are and shall remain exclusively owned by Doc Palapa. Doc Palapa shall have the sole discretion to make any and all decisions regarding the prosecution, maintenance, and/or enforcement of any of the Licensed Patents, including, but not limited to, whether to continue the prosecution or maintenance of any patent or patent application, or to abandon or allow to lapse any patent or patent application. Upon the request of Doc Palapa, Endureed shall provide Doc Palapa with all required notices and markings that are required to be marked in each applicable jurisdiction for the Licensed Products, and packaging, documentation, and labeling therefor, manufactured, used, tested or imported under this Agreement.

4.2    Endureed acknowledges and agrees that all rights, title, and interest in and to any Inventions, and all intellectual property and proprietary rights therein or related thereto, shall belong to Doc Palapa. Endureed shall promptly disclose to Doc Palapa in writing all information relating to any Inventions upon becoming aware of any such Inventions. Endureed agrees that it has no right, title or interest in or to any Inventions, or any intellectual property or proprietary right therein or related thereto, other than the license rights expressly granted in Section 2 of this Agreement. In consideration of the mutual promises contained in this Agreement, and to the extent that Endureed has any right, title or interest in or to any Invention, or any intellectual property or proprietary right therein or related thereto, by operation of law or otherwise, Endureed hereby irrevocably transfers and assigns and agrees to transfer and assign to Doc Palapa as Doc Palapa's exclusive property, all worldwide right, title, and interest in and to such Inventions, and all intellectual property and proprietary rights therein or related thereto (including, without limitation, all registrations and applications for registration thereof, and all priority rights therein under applicable international conventions for the protection of such rights), as and when such rights arise. Endureed shall cooperate fully in (a) vesting in Doc Palapa the ownership of worldwide right, title and interest in and to any and all such Inventions, and all intellectual property and proprietary rights therein or related thereto, and (b) assisting

Doc Palapa in obtaining patent, copyright and all other intellectual property and proprietary rights in such Inventions and in maintaining and protecting such intellectual property and proprietary rights, including, without limitation, executing any documents which Doc Palapa reasonably deems necessary for such purpose.

4.3     Endureed agrees that it will not in any way challenge, or assist any other party in challenging, Doc Palapa's ownership of, or the patentability, validity, or enforceability of, any of the Licensed Patents, or any claims therein.

## 5     CONFIDENTIALITY

5.1     Except to the extent otherwise provided in Paragraph 5.2 below, neither Party shall disclose to any third party a copy of this Agreement or any of its terms or conditions.

5.2     Notwithstanding Paragraph 5.1, each Party may disclose the terms and conditions of this Agreement:

5.2.1     as required by any court or other governmental body, or as otherwise required by law; provided that the Party required to disclose gives the other Party reasonable advance written notice thereof;

5.2.2     to a Party's legal counsel, accountants, or other professional advisors who have a need to know and who are bound to maintain as confidential the terms and conditions of this Agreement;

5.2.3     in the case of Doc Palapa, to a third party who is negotiating with Doc Palapa to acquire, to be acquired by or merge with Doc Palapa, or all or some of the assets of Palapa, provided that the third party agrees in writing to maintain as confidential the terms and conditions of this Agreement; and

5.2.4     in the case of Doc Palapa, to a third party who is negotiating with Doc Palapa to acquire ownership of one or more of the Licensed Patents or an exclusive license thereunder, provided that the third party agrees in writing to maintain as confidential and not to disclose to any third party the terms and conditions of this Agreement.

5.3     Notwithstanding anything in Paragraph 5.1 or Paragraph 5.2, (i) the existence of this Agreement shall not be considered confidential information, and a Party may disclose the existence of the Agreement to any person or Business at any time in its sole and unfettered discretion after the Effective Date.

5.4     The provisions of this Article 5 shall survive any expiration or termination of this Agreement.

5.5     In the event of any breach of this Article 5, the non-breaching Party may suffer irreparable harm and have no adequate remedy at law.  In such event or the threat of any such event, the non-breaching Party shall be entitled (in addition to any and all other permitted remedies) to injunctive relief, specific performance, and other equitable remedies to enforce this

Article 5, without proof of monetary damages or the inadequacy of other remedies, and without necessity of posting a bond or other security.

**6     REPRESENTATIONS; WARRANTIES; COVENANTS**

    6.1     Each Party represents, warrants, and covenants that:

        6.1.1   it has the requisite power, authority, and legal right to enter into this Agreement and to grant the licenses, releases, and covenants granted hereunder and to satisfy each and every one of its obligations hereunder;

        6.1.2   this Agreement constitutes a valid and binding obligation of said Party and is enforceable against such Party in accordance with its terms; and

        6.1.3   it has not made and will not make any commitments to or agreements with third parties that are inconsistent with or in derogation of the rights granted by or obligations assumed in this Agreement.

    6.2     Endureed represents and warrants that at the time of the Effective Date, no insolvency proceedings of any character, including bankruptcy, receivership, reorganization, or arrangement with creditors, voluntary or involuntary, affecting Endureed or its assets or Affiliates are pending, or to Endureed's knowledge, threatened.  At the time of the Effective Date, neither Endureed nor any of its Affiliates has made or taken any assignment for the benefit of creditors or any actions with a view to, or which would constitute the basis for, the institution of any such insolvency proceedings.

    6.3     Upon expiration or termination of this Agreement, unless the Parties enter a definitive agreement to the contrary, neither Endureed nor any of its Affiliates, nor any Customer, (a) shall design, develop, modify, manufacture, test, use, sell, offer for sale, or transfer any Licensed Products (until the last patent to expire contained in the Licensed Patents expires), or any product or composition under any of the Inventions, or (b) practice any of the claims contained in any of the Licensed Patents (until the last patent to expire contained in the Licensed Patents expires).

**7     INDEMNIFICATION**

Endureed shall defend, indemnify, and hold harmless Doc Palapa, its Affiliates, and their respective officers, directors, employees, agents, and representatives, and the successors and assigns of each of the foregoing, from and against any and all damages, suits, fees, judgments, liabilities, costs, losses and expenses (including reasonable attorneys' fees, expert witness fees, expenses, and costs of settlement) (collectively, "<u>Losses</u>") arising out of, relating to, or resulting from any claim, demand, suit, or cause of action ("<u>Claims</u>") that alleges or results from: (a) a breach of any of Endureed representations, warranties, or obligations under this Agreement, or a breach by Endureed of any other term or condition of this Agreement; (b) a claim that any of the Licensed Products infringes the intellectual property rights or other proprietary rights of a third party; or (c) the design, development, manufacture, testing, use, importation, offer for sale, or sale of the Licensed Products by Endureed, whether such activity is within or outside the scope of this Agreement.

8      DISCLAIMERS; LIMITATIONS OF LIABILITY

      8.1    EXCEPT AS EXPRESSLY PROVIDED HEREIN, DOC PALAPA DISCLAIMS ALL WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR FREEDOM FROM INFRINGEMENT. IN ADDITION, NOTHING IN THIS AGREEMENT SHALL BE CONSTRUED AS, AND DOC PALAPA EXPRESSLY DISCLAIMS, ANY WARRANTY OR REPRESENTATION:

           8.1.1  AS TO THE VALIDITY, ENFORCEABILITY, SCOPE, TERM OR TERRITORIAL COVERAGE OF ANY OF THE LICENSED PATENTS;

           8.1.2  AS TO THE LIKELIHOOD THAT ANY PENDING APPLICATION WILL ISSUE OR WILL HAVE ANY PARTICULAR SCOPE, OR THAT DOC PALAPA WILL PROSECUTE ANY PARTICULAR PENDING APPLICATION OR SEEK ANY PARTICULAR CLAIM;

           8.1.3  AS TO THE NON-INFRINGEMENT OF ANY PATENT OF A THIRD PARTY BY ANY ACTIVITY OF ENDUREED RELATED TO THE LICENSED PATENTS; AND

           8.1.4  AS TO THE LIKELIHOOD OF DOC PALAPA ENFORCING OR DEFENDING THE LICENSED PATENTS OR THE OUTCOME OF ANY LITIGATION INVOLVING THE LICENSED PATENTS.

      8.2    IN NO EVENT SHALL DOC PALAPA HAVE ANY LIABILITY FOR ANY INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, PUNITIVE, OR CONSEQUENTIAL DAMAGES, HOWEVER CAUSED AND UNDER ANY THEORY OF LIABILITY, WHETHER FOR BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO LOSS OF ANTICIPATED PROFITS, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  THESE LIMITATIONS SHALL APPLY NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.

9      TERM AND TERMINATION

      9.1    This Agreement shall commence on the Effective Date and continue thereafter until the last to expire of the Licensed Patents.

      9.2    The provisions of Articles 1, 3, 4, 5, 7, 8, 9, and 10 and Paragraphs 2.2, 2.3, 2.4 and 6.3 of this Agreement shall survive any expiration or termination of this Agreement. *[NOTE– REVIEW THESE IDENTIFIED SECTIONS/PARAGRAPHS BEFORE EXECUTION]*

      9.3    If Endureed or any Subsidiary (including any Acquired Unit after being acquired by Endureed or any Subsidiary) challenges, or aids or abets any other person or Business in challenging, the patentability, validity, or enforceability of any of the Licensed Patents that are

identified in the USPTO database as being assigned to Doc Palapa, or any claim thereof, Doc Palapa shall have the right to terminate this Agreement effective as of the date of notice to Endureed.

9.4     The licenses and releases granted herein shall be binding on any subsequent owner, assignee or exclusive licensee of a Licensed Patent, and any sale, assignment, other transfer or exclusive license of a Licensed Patent shall be so conditioned.

## 10    MISCELLANEOUS

10.1    Doc Palapa shall be entitled to seek injunctive relief, specific performance or other equitable relief relating to any of its intellectual property rights.

10.2    This Agreement shall be governed by, construed and interpreted, and the rights of the Parties determined in accordance with the laws of the State of Georgia, without regard to the choice of law principles thereof.

10.3    With respect to actions between the Parties arising under or related to this Agreement or any of the Licensed Patents, the Parties hereby: (a) submit to the exclusive jurisdiction of any state or federal court sitting in Fulton County, Georgia; and (b) waive any claim that any such court is an inconvenient forum.

10.4    In the event that it is determined by a court of competent jurisdiction that any provision of this Agreement is invalid, illegal, or otherwise unenforceable, such provision will be enforced as nearly as possible in accordance with the stated intention of the Parties, while the remainder of this Agreement will remain in full force and effect and bind the Parties according to its terms.  To the extent any provision cannot be enforced in accordance with the stated intentions of the Parties, such provision will be deemed not to be a part of this Agreement.

10.5    The Parties are independent contractors, and neither is an agent or employee of, and has no authority to bind, the other by contract or otherwise.  Nothing in this Agreement shall be deemed to constitute, establish, create, give effect to, or otherwise recognize a joint venture, partnership, or formal business association or entity of any kind.

10.6    The failure of either Party to insist upon strict adherence to any provision of this Agreement on any occasion shall not constitute a waiver, or deprive or limit that Party's right thereafter to insist upon strict adherence to that provision in any particular instance or occasion.  No waiver shall be effective except where such waiver is set forth in a writing signed by a person having authority to provide such waiver on behalf of the Party granting the waiver.

10.7   All notices hereunder shall be in writing and delivered as specified below. Any written notice shall be considered given and effective when delivered personally, or three (3) business days after being sent by courier or nationally recognized overnight delivery service, or seven (7) business days after being mailed via United States Post Office registered or certified mail, return receipt requested.

| **If to Doc Palapa:** | **If to Endureed:** |
|---|---|
| Doc Palapa Co.<br>3435 Chestatee Road<br>Gainesville, GA 30506<br>ATTN: Dave Valentine | _____<br>_____<br>_____<br>_____ |

10.8   This Agreement constitutes and embodies the entire Agreement between the Parties and supersedes all previous agreements, understandings, negotiations, discussions, offers, and acceptances. No amendment, modification, or supplement of any provisions of this Agreement shall be valid or effective unless made in writing and signed by a duly authorized representative of each Party.

10.9   It is understood and agreed that both Parties have had full opportunity to perform sufficient due diligence investigation, and neither Party has made any representations or warranties other than that explicitly stated herein. It is further agreed that neither Party has relied upon any promise, representation, or omission of the other Party in deciding to enter into this Agreement except as explicitly stated herein.

10.10  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

10.11  The individuals signing below represent and warrant that they have authority to sign on behalf of their respective business organizations in the capacities indicated.

10.12  All licenses and rights granted under this Agreement are, and shall otherwise be deemed to be, for purposes of Section 365(n) of Title 11, U.S. Code (the "Bankruptcy Code"), licenses of rights to "intellectual property" as defined in the Bankruptcy Code. The Parties agree that they retain and may fully exercise all of their rights and elections under the Bankruptcy Code.

**IN WITNESS WHEREOF**, the Parties hereto have duly executed this Non-Exclusive License Agreement as of the Effective Date.

| **Doc Palapa Co.:** | **Endureed:** |
|---|---|
| By: _____<br>Name_____<br>Title_____ | By: _____<br>Name_____<br>Title_____ |